<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ARCADIY YAGUDAYEV,** | |
| *Plaintiff.*, | **Civil Action No. 20-897** |
| **v.** | **OPINION** |
| **BMW OF NORTH AMERICA, LLC,** | |
| *Defendant.* | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendant BMW of North America, LLC's ("BMW NA" or "Defendant") Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (5), and (6), ECF No. 8.  Plaintiff Arcadiy Yagudayev ("Plaintiff") opposes the Motion.  ECF No. 11.  For the reasons explained below, the Motion is **GRANTED in part** and **DENIED in part**.

**I.    FACTUAL BACKGROUND**[1]

This matter arises out of Plaintiff's purchase of a BMW vehicle containing an allegedly defective "N63" engine that consumes an excessive amount of engine oil.  <u>See generally</u> Am. Compl.

On June 13, 2013, Plaintiff, a Pennsylvania resident, purchased a 2010 BMW 750i (the "Vehicle") for $68,365.04 from Chapman BMW, an authorized BMW dealer in Arizona.  <u>Id.</u> ¶¶ 10, 14-15.  The sale included coverage under a New Vehicle Limited Warranty (the "Warranty")

---

[1] The facts are drawn from the Amended Complaint, ECF No. 6.

wherein BMW NA warranted the Vehicle "against defects in materials or workmanship." Id. ¶ 28. The Warranty further allowed Plaintiff to obtain repair or replacement of any defective parts by notifying an authorized BMW center during the period of coverage. Id. Plaintiff decided to purchase the Vehicle in reliance on the Warranty's representations. Id. ¶ 25.

At the time of sale, BMW NA's recommended oil service interval for vehicles equipped with N63 engines was the earlier of 15,000 miles or two years. Id. ¶ 55. After Plaintiff purchased the Vehicle, however, he discovered that its engine consumed oil extremely rapidly, requiring Plaintiff to add additional engine oil to the Vehicle every 900 to 1,500 miles. Id. ¶¶ 16, 19. Plaintiff brought this issue to the attention of Chapman BMW during the Warranty period, who informed Plaintiff that the oil consumption level was "normal" and did not offer any repairs. Id. ¶ 18. Plaintiff alleges that to the contrary, the excess consumption by the N63 engine is a serious defect that results in additional service visits, increased maintenance costs, and a heightened risk of sudden engine failure. See e.g., id. ¶¶ 63-65, 67-69. Plaintiff further contends that BMW NA has known of this defect since 2008, id. ¶ 66, but nonetheless has embarked on a systematic campaign to conceal it from consumers, id. ¶¶ 48-55, 58-62. In particular, Plaintiff cites several technical service bulletins ("TSBs") Defendants issued from 2012 to 2013 that discussed issues related to the N63 engine, instructed service technicians to add extra oil to N63 vehicles, and offered alternative explanations of excess oil consumption, but did not suggest the engine itself may be defective. Id. ¶¶ 49-54.

Plaintiff has spent approximately $1,000.00 in out-of-pocket costs associated with the alleged N63 defect and alleges that the defect substantially impairs the use, value, and safety of the Vehicle. Id. ¶¶ 22, 71. Plaintiff asserts that the cost to replace the Vehicle's engine would range from $12,500 to $15,000. Id. ¶ 21.

## II.    PROCEDURAL HISTORY

Plaintiff originally belonged to a putative nationwide class of consumers that litigated and settled claims against Defendant arising out alleged defects in N63 engines.  See generally Bang v. BMW of N. Am., LLC, No. 15-6945, 2016 WL 7042071 (D.N.J. Dec. 1, 2016).  Plaintiff opted out of the class action settlement on August 23, 2018, Am. Compl. ¶ 89, and on December 3, 2018 filed an individual action against BMW, joined with thirty-nine other Bang opt-out plaintiffs, see Sarwar v. BMW of N. Am. LLC., No. 18-16750 (D.N.J.), ECF No. 1.  On November 27, 2019, this Court severed the Sarwar plaintiffs' claims and granted leave for each plaintiff to refile separate actions.  Id., ECF No. 42.  The Court further ordered that statute of limitations for any claim asserted in Sarwar was tolled during the pendency of that action and until January 27, 2020. Id., ECF No. 45.  Plaintiff initiated the current action on January 27, 2020, Compl., ECF No. 1, and served the Complaint upon Defendant's authorized agent in Massachusetts on February 13, 2020, ECF No. 3.

On April 2, 2020, Plaintiff filed the six count Amended Complaint, asserting: (1) breach of warranty pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (the "MMWA"), Am. Compl. ¶¶ 93-100 ("Count I"); (2) breach of the implied warranty of merchantability, id. ¶¶ 101-08 ("Count II"); (3) breach of express warranty, id. ¶¶ 109-17 ("Count III"); (4) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. (the "NJCFA"), id. ¶¶ 118-38 ("Count IV"); (5) violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521, et seq. (the "ACFA"), id. ¶¶ 139-49 ("Count V"); and (6) fraudulent concealment, id. ¶¶ 150-65 ("Count VI").  Plaintiff seeks rescission of his purchase of the Vehicle, compensatory damages representing a refund of the contract price and out-of-pocket costs, punitive damages, and attorney's fees.  Id. at 30-31.

Defendant filed the instant Motion on April 23, 2020 to dismiss the Amended Complaint for lack of subject matter jurisdiction, improper service, forum non conveniens, and failure to state a claim. See generally Def. Mem., ECF No. 8.1. Plaintiff has voluntarily withdrawn Count II in response to the Motion. See Pl. Opp. at 1 n.2.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

In resolving a Rule 12(b)(1) motion, a court first determines whether the motion presents a "facial" or "factual" attack on subject matter jurisdiction. See Const. Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and does not dispute the facts alleged in the complaint, Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Const. Party of Pa., 757 F.3d at 358. Here, the Motion is a facial attack because it asserts, based solely on the Amended Complaint, that Plaintiff lacks Article III standing and has not alleged an amount in controversy sufficient to invoke this Court's jurisdiction. See Def. Mem. at 12-15.

### B.   Rule 12(b)(5)

Rule 12(b)(5) permits the Court to dismiss a complaint without prejudice due to insufficient service of process. See Umbenhauer v. Woog, 969 F.2d 25, 30 n.6 (3d Cir. 1992). "[T]he party asserting the validity of service bears the burden of proof on that issue." Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).

### C.      Forum Non Conveniens

A district court has discretion to dismiss a case for <u>forum non conveniens</u> if it finds "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." <u>Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.</u>, 549 U.S. 422, 425 (2007).  Defendant bears the burden of demonstrating that dismissal is warranted and "must provide enough information to enable the . . . Court to balance the parties' interests." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 258 (1981). The Court may rely on affidavits and other formal written statements in reaching its decision. <u>Van Cauwenberghe v. Biard</u>, 486 U.S. 517, 529 (1988).

### D.      Rule 12(b)(6)

 In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).    The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

## IV.   ANALYSIS

### A.      Subject Matter Jurisdiction

Defendant challenges this Court's subject matter jurisdiction on two grounds.  First, Defendant argues that Plaintiff lacks Article III standing because he has failed to allege a concrete injury.  <u>See</u> Def. Mem. at 14-15.  Second, Defendant contends that Plaintiff has failed to allege

that the amount-in-controversy exceeds $50,000, as required for federal jurisdiction under the MMWA.  See id. at 12-14.  The Court disagrees and finds that it may exercise jurisdiction at this stage.

### 1.    Article III Standing

A plaintiff must allege three essential elements to establish Article III standing: (1) a "concrete and particularized" injury-in-fact; (2) a "causal connection between the injury and the conduct complained of;" and (3) "a likelihood that the injury will be redressed by a favorable decision."  In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  Defendant challenges only the first element.

The injury-in-fact requirement is "very generous, requiring only that claimant allege[] some specific, identifiable trifle of injury."  Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014) (citation and quotation marks omitted).  Here, Plaintiff has alleged concrete injury in the form of out-pocket maintenance costs and the diminished value of the Vehicle.  See Am. Compl.  ¶¶ 22, 71.  This suffices to satisfy Plaintiff's modest burden to allege an injury-in-fact, and Plaintiff has accordingly established Article III standing.  See Bang, 2016 WL 7042071, at *4 (finding standing based on diminished resale value and out-pocket costs incurred by purchasers of BMW vehicles with N63 engines).[2]

---

[2] Other courts have uniformly rejected BMW's attempts to dismiss the claims of Bang opt out plaintiffs for lack of standing.  See, e.g., Hurley v. BMW of N. Am., LLC, No. 18-5320, 2020 WL 1624861, at *5 (E.D. Pa. Apr. 2, 2020); Llort v. BMW of N. Am., LLC, No. 20-94, 2020 WL 2928472, at *6 (W.D. Tex. June 2, 2020); Harris v. BMW of N. Am., LLC, No. 19--16, 2019 WL 4861379, at *3 (E.D. Tex. Oct. 2, 2019).

2.      **Amount-in-Controversy**

The Court may exercise diversity jurisdiction over Plaintiff's state law claims because the parties are diverse[3] and the total amount in controversy could plausibly exceed $75,000.[4]  See 28 U.S.C. § 1332(a).  In calculating the amount in controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  In re Paulsboro Derailment Cases, 704 F. App'x 78, 84 (3d Cir. 2017) (citation omitted).  To justify dismissal, it must be apparent "to a legal certainty that the plaintiff cannot recover the jurisdictional amount."  Frederico v. Home Depot, 507 F.3d 188, 197 (3d Cir. 2007) (citation omitted).

Plaintiff's state law claims under New Jersey and Arizona law seek damages representing the purchase price of the vehicle, $68,365.04, and out-of-pocket costs totaling $1,000.  Am. Compl. ¶¶ 15, 22; see, e.g., Amato v. Subaru of Am., Inc., No. 18-16118, 2019 WL 6607148, at *19 (D.N.J. Dec. 5, 2019) ("Actual damages [under the ACFA] include out of pocket expenses which encompasses consideration paid on the contract and all sums needed to restore a party to the position it occupied before the wrongful conduct.") (citation and quotation marks omitted); see also Hurley, 2020 WL 1624861, at *4 ("[C]ourts in this circuit have held that, when a plaintiff claims an engine defect and fraudulent concealment of the defect, the vehicle's entire value is at issue.") (citation and quotation marks omitted).  Plaintiff has also pled claims that, if successful, may entitle him to an award of attorney's fees and punitive damages.  Arizona, for example,

---

[3] Plaintiff resides in Pennsylvania.  Am. Compl. ¶ 10.  Defendant is a limited liability company that is wholly owned by BMW (US) Holding Corp., a Delaware corporation with its principal place of business in New Jersey.  Id. ¶ 11; see Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members."); 28 U.S.C. § 1332(c)(1) (deeming a corporations to be a citizen of its state of incorporation and the state where it maintains its principal place of business).

[4] The Amended Complaint does not specifically assert diversity jurisdiction, and Plaintiff's opposition brief argues the issue only in a footnote.  Pl. Opp. at 15 n.6.  The Court, however, must sua sponte address matters concerning its subject-matter jurisdiction.  See Huber v. Taylor, 532 F.3d 237, 249 (3d Cir. 2008).  Defendant has not responded to Plaintiff's argument for diversity jurisdiction.

permits the recovery of attorney's fees in an action for breach of warranty, Chaurasia v. Gen. Motors Corp., 126 P.3d 165, 174 (Ariz. Ct. App. 2006), and an award of punitive damages under the ACFA, Sellinger v. Freeway Mobile Home Sales, Inc., 521 P.2d 1119, 1123 (Ariz. 1974).[5]

At this stage, the Court cannot conclude with legal certainty that an award of punitive damages and/or attorney's fees would not push Plaintiff's potential recovery above $75,000. Subject matter jurisdiction over Plaintiff's state law claims is therefore warranted.[6]

Defendant argues, correctly, that the Court cannot determine whether original jurisdiction exists over Plaintiff's federal MMWA claim because Plaintiff has failed to "allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle."[7] Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 402-03 (3d Cir. 2004) (citation and quotation marks omitted); see also Hurley, 2020 WL 1624861, at *4 n.1 (noting that the MMWA did not provide an independent basis for jurisdiction where Plaintiffs alleged that they "paid between $47,901.47 and $77,866.40" for BMW vehicles equipped with N63 engines, but failed to plead the facts required by Samuel-Basset).   Even so, the Court may exercise supplemental jurisdiction over the MMWA claim

---

[5] As discussed infra, Plaintiff's claims for breach of warranty and consumer fraud under Arizona law survive the instant Motion.

[6] This result accords with the conclusions of other courts considering the amount in controversy in similarly-valued claims brought by Bang opt-out plaintiffs.  See e.g., Hurley, 2020 WL 1624861, at *4; Llort, 2020 WL 2928472, at *5; Harris, 2019 WL 4861379, at *4-5.

[7] Original federal jurisdiction over a MMWA breach of warranty claim brought by an individual Plaintiff exists only where the amount in controversy exceeds $50,000.  15 U.S.C. § 2310(d)(3).  Any claim for interest, attorney's fees, or costs must be excluded from the jurisdictional calculation, Suber v. Chrysler Corp., 104 F.3d 578, 589 n.12 (3d Cir. 1997), and the Court may not consider the available of damages under pendent state law claims, Mele v. BMW of N. Am., Inc., No. 93-2399, 1993 WL 469124, at *4 (D.N.J. Nov. 12, 1993).  Moreover, punitive damages may be considered only if they are recoverable under the state law that forms the basis of plaintiff's breach of warranty claim. See, e.g., Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 225 (2d Cir. 2017); Kelly v. Fleetwood Enters., Inc., 377 F.3d 1034, 1039 (9th Cir. 2004).  Plaintiff brings claims under New Jersey and Arizona law, neither of which permits the recovery of punitive damages for breach of warranty alone.  See Guardavacarro v. Home Depot, No. 16-8796, 2017 WL 3393812, at *9 (D.N.J. Aug. 8, 2017); Barrio v. Gisa Invs. LLC, No. 20-991, 2020 WL 6081495, at *3 & n.1 (D. Ariz. Oct. 15, 2020).

pursuant to 28 U.S.C. § 1367(a).  See Hurley, 2020 WL 1624861, at *4 n.1 (citing Pierre v. Planet Auto., Inc., 193 F. Supp. 3d at 171-73 (E.D.N.Y. 2016)).

### B.   Service on BMW NA

Defendant argues that Plaintiff failed to properly serve the Complaint because it served BMW NA's authorized agent in Massachusetts instead of effecting service within New Jersey, as required by New Jersey Court Rule 4:4(a)(1).  Def. Mem. at 5-8.  Plaintiff counters that service was proper under Federal Rule of Civil Procedure 4(h), Pl. Opp. at 5-6, and the Court agrees.

The Federal Rules of Civil Procedure govern the requirements for proper service in federal court.  Ceus v. N.J. Lawyers Serv., LLC, No. 19-17073, 2020 WL 5017053, at *1 (D.N.J. Aug. 25, 2020).  Rule 4(h) permits service on an unincorporated association "in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to an officer [or] a managing or general agent."  Fed. R. Civ. P. 4(h)(1)(B).  Nothing in the text of the rule prohibits service upon the out-of-state agent of an in-state defendant.[8]  Contrary to Defendant's assertion, compliance with state law governing service is an alternative means of service, but not the exclusive means.  See N.Y. Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co., No. 10-148, 2011 WL 2038766, at *1 (D.N.J. May 24, 2011) (citing N.J. Ct. R. 4:4-4(a)).

Because Defendant concedes that Plaintiff served its registered agent in Massachusetts, Def. Mem. at 7, service upon it was proper.

### C.   Forum Non Conveniens

Defendant next argues that the Amended Complaint should be dismissed for forum non conveniens because it concerns the claims of a Pennsylvania resident who purchased a vehicle in

---

[8] Defendant frames its argument as a challenge to the Court's personal jurisdiction but does not, and cannot, dispute that it is subject to this Court's general jurisdiction as a limited liability company with its principal place of business in New Jersey.  Am. Compl. ¶ 11; see Frutta Bowls Franchising LLC v. Bitner, No. 18-2446, 2018 WL 6499760, at *3 (D.N.J. Dec. 10, 2018) (citing Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)).

Arizona.  Def. Mem. at 9-12.  The Court disagrees because Defendant has not suggested that any other forum would be more convenient than the federal court system.

Dismissal under the common law doctrine of <u>forum non conveniens</u> is appropriate only "in cases where the alternative forum is abroad," or "perhaps in rare instances where a state or territorial court serves litigational convenience best."  <u>Skyers v. MGM Grand Hotel LLC</u>, No. 14-4631, 2015 WL 1497577, at *2 (D.N.J. Apr. 1, 2015) (quoting <u>Sinochem</u>, 549 U.S. at 429).  Where a defendant instead contends that another federal court would be more convenient, the appropriate mechanism is to seek a transfer of venue pursuant to 28 U.S.C. § 1404(a) instead of dismissal.[9] <u>Maliki v. Holy Redeemer Hosp.</u>, No. 15-1591, 2016 WL 4161094, at *1 (D.N.J. Aug. 5, 2016) (citing <u>Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.</u>, 571 U.S. 49, 60 (2013)).

Defendant has not argued that state court, as opposed to federal court, would provide a more convenient forum for Plaintiff's claims.  Defendant also has not sought a transfer nor suggested an alternative federal venue for this action.  The Court therefore denies Defendant's request for dismissal on grounds of <u>forum non conveniens</u>.

### D.    Failure to State a Claim

#### 1.    Breach of Express Warranty (Counts I & III)

The MMWA provides a federal cause of action to "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty[.]"  15 U.S.C. § 2310(d)(1).  A federal MMWA claim based on a breach of warranty is dependent on the success of a breach of warranty claim under the applicable state law. <u>See, e.g.</u>, <u>Cooper v. Samsung Elecs. Am., Inc.</u>, 374 F. App'x 250, 254 (3d Cir. 2010); <u>Tatum v.</u>

---

[9] A defendant may seek outright dismissal only where venue is improper.  28 U.S.C. § 1406(a).  Here, venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because BMW NA resides in New Jersey.  <u>See</u> Am. Compl. ¶ 11.

Chrysler Grp. LLC, No. 10-4269, 2012 WL 6026868, at *8 (D.N.J. Dec. 3, 2012).  The Court therefore considers Plaintiff's federal and state claims for breach of express warranty in tandem.

### a.    Choice of Law

Defendant first argues that Plaintiff's breach of express warranty claims should be dismissed because Plaintiff, as an out-of-state resident who was injured outside New Jersey, may not bring a claim for breach of warranty under New Jersey law.  Def. Mem. at 23-25, 38.  Plaintiff's opposition clarifies that he brings claims under both New Jersey and Arizona law, but argues that the Court need not conduct a choice-of-law analysis at this stage because no actual conflict of law exists.  Pl. Opp. at 21-22.  The Court agrees with Plaintiff.

A federal court sitting in diversity applies the choice of law rules of the state in which it is located, here New Jersey.  Collins v. MaryKay, Inc., 874 F.3d 176, 183 (3d Cir. 2017).  Under New Jersey's choice of law rules, the Court first analyzes "whether an actual conflict exists" between the laws of New Jersey and Arizona.  See Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 173 (3d Cir. 2011).  Defendant argues that a conflict exists because Arizona, unlike New Jersey, requires a plaintiff to prove reliance on an express warranty and may require a plaintiff to show privity to prevail against a remote distributor.  Def. Mem. at 24.

First, the Court disagrees that a conflict exists with regards to privity.  The New Jersey Supreme Court has held that a "buyer need not establish privity with [a] remote supplier to maintain an action" for breach of express warranty under the Uniform Commercial Code (the "UCC").  Spring Motors Distribs., Inc. v. Ford Motor Co., 98 N.J. 555, 561 (1985).  Similarly, Arizona courts have held that while the UCC does not apply absent privity of contract, the "lack of privity between a manufacturer and retail purchaser does not preclude a claim outside the U.C.C. for breach of express warranty."  De Shazer v. Nat'l RV Holdings, Inc., 391 F. Supp. 2d 791, 794-

95 (D. Ariz. 2005) (citing <u>Flory v. Silvercrest Indus., Inc</u>., 633 P.2d 383 (Ariz. 1981) and permitting retail purchaser's claim for breach of express warranty under Arizona common law against RV manufacturer despite lack of privity).  Plaintiff may thus maintain an action against Defendant under either New Jersey statutory law or Arizona common law without demonstrating privity.

Second, to the extent Arizona law requires a showing of reliance, <u>Murphy v. Nat'l Iron & Metal Co.</u>, 227 P.2d 219, 222 (Ariz. 1951), Plaintiff has adequately alleged that he purchased the Vehicle in reliance on the Warranty's representations, Am. Compl. ¶ 25.  Accordingly, this distinction between Arizona and New Jersey law is of no import here.

**b.    Sufficiency of Allegations**

Defendant next argues that Plaintiff has failed to plausibly allege a breach of express warranty.  Def. Mem. at 25-26.  The Court disagrees.

To state a claim for breach of express warranty, Plaintiff must allege (1) "Defendant made an affirmation, promise or description [of] the product;" (2) "this affirmation, promise or description became part of the basis of the bargain for the product;" (3) "the product ultimately did not conform to the affirmation, promise or description;" (4) "proximate cause and damages;" and (5) reasonable notice to the warrantor.  <u>Cox v. Chrysler Grp., LLC</u>, No. 14-7573, 2015 WL 5771400, at *5 (D.N.J. Sept. 30, 2015) (citations and quotation marks omitted); <u>see also</u> <u>Hix v. Bos. Sci. Corp.</u>, No. 19-422, 2019 WL 6003456, at *5 (D. Ariz. Nov. 14, 2019) ("Under Arizona law, [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.") (citation and quotation marks omitted).

Plaintiff has pled each essential element for breach of express warranty.  First, Defendant warranted the Vehicle "against defects in materials or workmanship" and agreed "to repair or replace components found to be defective."  Am. Compl. ¶¶ 26, 28.  Second, Plaintiff alleges that the Warranty materially influenced his decision to purchase the Vehicle.  Id. ¶ 25.  Third, he alleges that the Vehicle contains a defective engine, id. ¶¶ 33-47, 56-57, and that Chapman BMW— allegedly acting as BMW NA's agent for purposes of vehicle repairs—failed to repair or replace the engine, id. ¶¶ 18, 27, 29-31.  Fourth, Plaintiff suffered damages in the form of out-of-pocket costs and a diminution of value as a result of the alleged defect.  Id. ¶¶ 22, 71.  Finally, Plaintiff provided notice to Chapman BMW within the Warranty period.  Id. ¶ 17.

As the Amended Complaint states a claim for breach of express warranty, the Court denies the Motion as to Counts I and III.  See also, e.g., Bang, 2016 WL 7042071, at *6 (denying motion to dismiss breach of express warranty claim based on allegedly defective N63 engine); Hurley, 2020 WL 1624861, at *6 (same); O'Connor v. BMW of N. Am., LLC, No. 18-03190, 2020 WL 1303285, at *5 (D. Colo. Mar. 19, 2020) (same).

### 2.      New Jersey Consumer Fraud Act (Count IV)

Defendant contends that Plaintiff may not invoke the protections of the NJCFA because his allegations bear an insufficient connection to New Jersey.  Def. Mem at 15-20.  The Court agrees.

A plaintiff may bring state law consumer protection claims "only under the law of the state where he . . . lived and the alleged injury occurred."  Cox v. Chrysler Grp., LLC, No. 14-7573, 2017 WL 1202655, at *4 (D.N.J. Mar. 30, 2017) (quoting Dziekak v. Whirlpool Corp., 26 F. Supp. 3d 304, 332 (D.N.J. 2014).  In Cooper v. Samsung Electronics, the plaintiff purchased a television in Arizona and sued its New Jersey-based manufacturer under the NJCFA.  374 F. App'x at 255.

The court held that "there is an actual conflict between the consumer protection statutes of New Jersey and Arizona" and determined that Arizona law must govern because "the transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters." Id. at 254-55; see also Nirmul v. BMW of N. Am., LLC, No. 10-5586, 2011 WL 5195801, at *5 (D.N.J. Oct. 31, 2011) ("[Plaintiffs] both purchased their vehicles outside of New Jersey, as such, . . . they are not entitled to sue under NJCFA because the transactions in question regarding their vehicles bear no relationship to New Jersey[.]").

Here, as in Cooper and Nimrul, the only allegation connecting Plaintiff's Arizona transaction to New Jersey is the location of Defendant's headquarters.  Am. Compl. ¶ 11.  Plaintiff must therefore pursue his consumer fraud claim under Arizona law, and the Court dismisses Count IV.

### 3.    Arizona Consumer Fraud Act (Count V)

Defendant next asserts that Plaintiff has failed to plead his ACFA claim with particularity, as required by Federal Rule of Civil Procedure 9(b).[10]  Def. Mem. at 22-23.  The Court agrees that the Amended Complaint fails to particularly plead an ACFA claim based on an affirmative representation but concludes that Plaintiff has adequately pled fraud by omission.

To state a claim under the ACFA, a plaintiff must allege (1) a "deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact . . . in connection with the sale or advertisement of consumer goods or services;" (2) reliance, although "unlike common law fraud, this reliance need not be reasonable;" and (3) proximate cause and damages.  Cheatham v. ADT Corp., 161 F. Supp.

---

[10] The parties do not dispute that ACFA claims sound in fraud and are subject to Rule 9(b).  See, e.g., In re Ariz. Theranos, Inc., Litig., 256 F. Supp. 3d 1009, 1022-31 (D. Ariz. 2017).

3d 815, 825-26 (D. Ariz. 2016) (citations and quotation marks omitted); see Ariz. Rev. Stat. § 44-1522.  In the case of a fraudulent omission, the plaintiff must also allege that the defendant intended that a consumer rely on the omission.  Cheatham, 161 F. Supp. 3d at 830.  Moreover, Rule 9(b) requires a plaintiff alleging fraud to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  Frederico, 507 F.3d at 200 (citation omitted).

Plaintiff alleges both affirmative misrepresentations and fraudulent omissions, which the Court will address in turn.

### a.      Affirmative Misrepresentations

The Amended Complaint alleges that Defendant affirmatively misrepresented the characteristics, uses, and benefits of the Vehicle.  See, e.g., Am. Compl. ¶¶ 130, 143.  Plaintiff, however, has failed to satisfy his burden to "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation" into the Amended Complaint. Frederico, 507 F.3d at 200 (citation omitted).  Plaintiff first references statements Defendant made in TSBs, which, as Plaintiff himself acknowledges, are "issued by automotive manufacturers and directed only to automotive dealers."  Am. Compl. ¶ 49 n.2.  Plaintiff does not suggest he knew of the TSBs at the time of purchase, or that he was entitled to rely on representations made solely to dealers.[11]

Plaintiff also alleges that despite the consumption defect, Defendant's recommend oil change intervals for BMW vehicles with N63 engines was every 15,000 miles or two years.  Id. ¶ 55.  To the extent this recommendation can be considered a representation of material fact,

---

[11] It is also unclear which, if any, of the TSBs were issued prior to Plaintiff's purchase of the Vehicle.  The only TSB with a date attached to it was issued in June 2013, the month of Plaintiff's purchase.  Am. Compl. ¶¶ 14, 51.

however, Plaintiff fails to specify when the recommendation was made or whether Plaintiff relied on it in deciding to purchase the Vehicle.  Courts that have upheld consumer fraud claims related to manufacturing defects have required more concrete representations.  For instance, in <u>Amato</u>, the court upheld an ACFA claim concerning an engine defect based on the manufacturer's specific representations about the engine in its Owner's Manual and Warranty & Maintenance Booklet, which was provided to the plaintiffs prior to their purchase of the subject vehicles.  <u>Amato</u>, 2019 WL 6607148, at *15.  The Amended Complaint has no similar allegations concerning the Vehicle's engine.

The Court is unable to discern any other pre-purchase representations by Defendant in the Amended Complaint and concludes that those discussed above have not been adequately pled.

### b.    Fraudulent Omissions

 Plaintiff next alleges that Defendant knew of the N63 defect and fraudulently concealed it from consumers.  <u>See, e.g</u>, Am. Compl. ¶¶ 126-27, 143.  Unlike affirmative misrepresentations, alleged omissions are "not held to the same standard of specificity" because a plaintiff "will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim."  <u>Kennedy v. Samsung Elecs. Am., Inc.</u>, No. 14-4987, 2015 WL 2093938, at *3 (D.N.J. May 5, 2015) (citations and quotation marks omitted); <u>see also</u> <u>In re Ariz. Theranos, Inc.</u>, 256 F. Supp. 3d at 1023-24 (applying "slightly more relaxed" pleading standard to ACFA claim for fraud by omission) (citation and quotation marks omitted).

A plaintiff can carry his Rule 9(b) burden to plead consumer fraud by omission through allegations showing that a manufacturer knew of a defect in its product prior to the plaintiff's purchase and concealed it from consumers.  <u>See, e.g.</u>, <u>Amato</u>, 2019 WL 6607148, at *16-17 (ACFA claim); <u>Kennedy</u>, 2015 WL 2093938, at *3-4; <u>Henderson v. Volvo Cars of N. Am., LLC</u>,

No. 09-4146, 2010 WL 2925913, at *5-7 (D.N.J. July 21, 2010).  For example, the <u>Henderson</u>

court deemed Rule 9(b) satisfied where a complaint alleged only that:

> Defendants were aware that model years 2003 through 2005 of the
> Volvo XC90 T6 suffered from a common design defect resulting in
> transmission problems, but failed to disclose this to Plaintiffs and
> Class members. . . . [and]
>
> Defendants did not fully and truthfully disclose to its customers the
> true nature of the inherent design defect with the transmission,
> which was not readily discoverable until years later, often after the
> warranty has expired.

<u>Henderson</u>, 2010 WL 2925913, at *5 (finding these allegations "substantially similar" to those in

other omission-based consumer fraud claims that withstood a motion to dismiss).  Likewise, the

court in <u>Kennedy</u> found an allegation that a manufacturer "concealed the fact that the washing

machines had a latent, unfixable design defect" sufficient when accompanied by a description of

the defect and detailed allegations showing that the manufacturer knew of the defect.  <u>Kennedy</u>,

2015 WL 2093938, at *4.

Here too, Plaintiff has alleged that Defendant knew of the N63 defect since at least 2008

and that following consumer complaints about excess oil consumption, Defendant issued TSBs

and took other measures designed to conceal such concerns.  Am. Compl. ¶¶ 38-62, 66.  The

Amended Complaint also alleges that despite knowledge of the defect, Defendant did not inform

consumers, like Plaintiff, and continued to advertise and sell N63 vehicles with a recommended

oil service interval of every 15,000 miles or two years.  <u>Id.</u> ¶¶ 60, 127, 133.  In line with the above

precedents, the Court finds these allegations sufficient to plead fraud by omission and satisfy the

first element of Plaintiff's ACFA claim.

Turning to the remaining elements of an ACFA claim, reliance on an omission can be

shown by "establishing that had the omitted information been disclosed, [the plaintiff] would have

been aware of it and behaved differently."  In re Ariz. Theranos, 256 F. Supp. 3d at 1028 (citation and quotation marks omitted).  Plaintiff adequately alleges that "[h]ad the defect in the Vehicle been disclosed, Plaintiff would not have purchased the Vehicle or would have paid less for the Vehicle had he decided to purchase it."  Am. Compl. ¶ 136.  Plaintiff also pleads that Defendant intended to induce Plaintiff into purchasing the vehicle by withholding information concerning the defect.  Id. ¶¶ 130, 143.

Finally, Plaintiff alleges that as a result of his purchase in reliance on Defendant's omission, he has suffered damages in the form of out-of-pocket maintenance and service costs and possession of a vehicle valued at less than what he bargained for.  Id. ¶¶ 21-22, 71, 135; see Amato, 2019 WL 6607148, at *19 (noting that recoverable ACFA damages "include out of pocket expenses which encompasses consideration paid on the contract and all sums needed to restore a party to the position it occupied before the wrongful conduct").  As Plaintiff has accordingly pled each element of an ACFA fraudulent omission claim, the Court denies the Motion as to Count V.

### 4.    Fraudulent Concealment (Count VI)

The Motion does not separately address Count VI, but generally argues that all fraud claims should be dismissed for failure to plead with specificity.  Def. Mem. at 20-22.  The Court disagrees with this reasoning, but nonetheless concludes that Plaintiff has failed to state a claim for common law fraudulent concealment.

The core elements of fraudulent concealment are substantially similar under both New Jersey and Arizona law.[12]  The states do have different requirements with regards to the type of relationship between the parties necessary to support a claim, but the Court need not resolve this conflict because the Amended Complaint fails to state a claim under either law.

---

[12] See generally Argabright v. Rheem Mfg. Co., 258 F. Supp. 3d 470, 488-90 (D.N.J. 2017).

In New Jersey, a duty to disclose is an essential element of a claim for common law fraudulent concealment.  See Argabright, 258 F. Supp. 3d at 470.  A duty to disclose exists in the presence of a "special relationship" between the parties, id., or where disclosure is necessary to make a previous statement true, In re Volkswagen Timing Chain Prod. Liab. Litig., No. 16-2765, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017).  Car manufacturers do not typically owe a duty of disclosure to car purchasers.  See Argabright, 258 F. Supp. 3d at 490 (collecting cases).  And as discussed above, Plaintiff's allegations concerning Defendant's TSBs and recommended oil change intervals, Am. Compl. ¶¶ 50-55, fail to particularly plead a pre-purchase representation that would impose a duty to correct a partial disclosure.  The Amended Complaint therefore does not plead a duty to disclose under New Jersey law.

Arizona law, on the other hand, does not impose any "duty to disclose" requirement.  Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund, 38 P.3d 12, 21 (Ariz. 2002).  Instead, common law claims for fraudulent concealment or nondisclosure may only be brought between counterparties to a transaction.  See Resort Funding, L.L.C. v. Canyonview Dev., L.P., No. 11-0069, 2012 WL 3760440, at *11 (Ariz. Ct. App. Aug. 30, 2012) (citing Wells Fargo Bank, 38 P.3d at 34 n.22).  Plaintiff here alleges that he purchased the Vehicle from Chapman BMW, not directly from Defendant.  Am. Compl. ¶ 14.  He thus has not pled a "transaction" between himself and Defendant.

Further, while the Amended Complaint pleads that Chapman BMW acted as an agent of Defendant for purposes of vehicle repairs, id. ¶¶ 29-31, it does not sufficiently allege agency concerning vehicle sales.  To the contrary, courts in this Circuit have observed that "automobile dealerships generally are not agents of automobile manufacturers regarding the selling of vehicles" absent affirmative evidence to the contrary.  Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825,

845-46 (W.D. Pa.  2007) (collecting cases); see also In re Ford Motor Co. E-350 Van Prod. Liab.

Litig. (No. II), No. 03-4558, 2010 WL 2813788, at *16 (D.N.J. July 9, 2010) ("Although a plaintiff

seeking to show [a manufacturer-dealership] agency relationship faces an 'uphill battle' the inquiry

is fact-specific and no per se rule bars such a finding on an appropriate factual basis) (quoting

Zeno, 480 F. Supp. 2d at 846).  Plaintiff pleads no facts to suggest agency with regards to sales.

As Plaintiff cannot sustain his common law claim for fraudulent concealment under either

New Jersey or Arizona law, Count VI is dismissed.

### E.      Timeliness

Defendant last argues that Plaintiff's claims should be dismissed because the face of the

Amended Complaint demonstrates that they are barred by the applicable statutes of limitations.

Def. Mem. at 26-34.  The Court disagrees.

The running of a statute of limitations is an affirmative defense, and as such may only

provide grounds for dismissal under Rule 12(b)(6) if the bar is apparent on the face of the

complaint.  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citations omitted).  Plaintiff's

surviving breach of warranty claims are governed by a four-year statute of limitations.  See Spring

Motors Distribs., 98 N.J. at 561; Hillery v. Georgie Boy Mfg., Inc., 341 F. Supp. 2d 1112, 1115

(D. Ariz. 2004).  ACFA claims are subject to a one-year statute of limitations.  Ariz. Rev. Stat.

Ann. § 12-541(5).  But each of these claims accrue only after a plaintiff discovers or should have

discovered, the underlying facts—here, the existence of the alleged engine defect.  See N.J.S.A.

§ 12:A:2-725 ("where a warranty explicitly extends to future performance of the goods and

discovery of the breach must await the time of such performance the cause of action accrues when

the breach is or should have been discovered");  Gust, Rosenfeld & Henderson v. Prudential Ins.

Co. of Am., 898 P.2d 964, 966 (Ariz. 1995) ("[A] plaintiff's cause of action does not accrue until

the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause."); Cheatham, 161 F. Supp. 3d at 815 ("The [ACFA] limitations period begins to run when the consumer discovers or with reasonable diligence should have discovered both the 'who' and the 'what' of her claim.").

Though Plaintiff purchased the Vehicle in June 2013, the Amended Complaint alleges a systematic effort by BMW to conceal the N63 engine defect from consumers, beginning in 2008 and continuing for an indeterminate period thereafter.  Am. Compl. ¶¶ 48-55, 58, 62, 66.  These allegations preclude the Court from determining when Plaintiff should have discovered the defect at the pleading stage.  See, e.g., Hurley, 2020 WL 1624861, at *8; Mize v. BMW of N. Am., LLC, No. 19-7, 2020 WL 1526909, at *7 (N.D. Tex. Mar. 31, 2020); O'Connor, 2020 WL 1303285, at *4; Schneider v. BMW of N. Am., LLC, No. 18-12239, 2019 WL 4771567, at *7 (D. Mass. Sept. 27, 2019); Carroll v. BMW of N. Am., LLC, No. 19-224, 2019 WL 4243153, at *8 (S.D. Ind. Sept. 6, 2019).  The Court declines to depart from recent precedent and agrees that dismissal of Plaintiff's remaining claims under their respective statutes of limitations would be premature.[13]

## V.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Amended Complaint, ECF No. 8 is **GRANTED in part** and **DENIED in part**.  Counts II, IV, and VI of the Amended Complaint are **DISMISSED**.  To the extent Plaintiff can cure the pleading deficiencies identified in this opinion, he may file an amended pleading within thirty (30) days.

Date: November 13th, 2020

/s Madeline Cox Arleo
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[13] The Court does not reach Plaintiff's alternative arguments that the statutes of limitations were tolled by Defendant's fraudulent concealment or the doctrine of "class action tolling" espoused in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974).  See Pl. Opp. at 27-32.